IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GEORGE REYNOLD EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV499 |
| | ) | |
| GUILFORD COUNTY DETENTION | ) | |
| CENTER, B.J. BARNES, SGT. LANIER, | ) | |
| OFFICER MANGUM, GUILFORD | ) | |
| COUNTY NORTH CAROLINA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff George Reynold Evans, who was at one time incarcerated in the Guilford County, North Carolina, jail. He alleges that Defendants violated his constitutional rights while he was an inmate there. Plaintiff Evans names as Defendants the Guilford County Detention Center, B.J. Barnes (the Sheriff of Guilford County), Guilford County, North Carolina, and two jail employees, Sgt. Lanier and Officer Mangum. Defendants B.J. Barnes, Guilford County Detention Center, Sgt. Lanier, and Officer Mangum have filed a Motion to Dismiss for Failure to State a Claim [Doc. #15] pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Guilford County has filed a Motion for Judgment on the Pleadings [Doc. #22] pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set out below, the Court recommends that both Motions be granted, and that this action be dismissed.

I.      FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff's Complaint is filed pursuant to 42 U.S.C. § 1983, and in it he alleges that he was incarcerated in the Guilford County jail ( or "detention center") in the middle of October 2011. (Compl. [Doc. #5] at 3.)  The public records of the detention center show that Plaintiff entered the facility on October 17, 2011, and was released on November 7, 2011.[1]  Therefore, Plaintiff spent about 21 days in the jail.  Plaintiff was apparently a pretrial detainee during this period. Plaintiff names as Defendants the Guilford County detention center, Guilford County Sheriff B.J. Barnes, Sergeant Lanier and Officer Mangum, who work at the detention center, and Guilford County.  The Defendants are sued in their individual and official capacities.

Plaintiff alleges that the detention center was operated by and under the control of Sheriff Barnes during the relevant time period.  Plaintiff makes several allegations against the medical staff at the jail.  (Compl. [Doc. #5] at 3.)  He claims that the medical staff denied him heart medication for the treatment of high blood pressure, atrial fibrillation, and an enlarged heart. He says that as a result of being denied medication, he had to be admitted to the hospital. Plaintiff also claims that the medical staff used an "out dated medical tube" to perform a medical test, which put him at risk due to an unidentified blood disorder from which he says that he suffers.  Plaintiff claims that he was not provided a special diet, and that the medical staff should not have charged him for treatment of chronic conditions.

Plaintiff also makes general allegations regarding the conditions at the detention center. He claims that he was not afforded the proper amount of square footage per inmate, he had to

---

[1] The Court takes judicial notice of this public record.  See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

sleep on the floor of a cell designed to hold 6 inmates but holding 12 to 15 inmates, and the cell had only one toilet, one shower, and one sink. Plaintiff further alleges that there were sometimes no sheets, towels, or face cloths. According to Plaintiff, the food was served cold and the food servers did not have the proper equipment or pass a health test.

Plaintiff also complains that he was not afforded due process at disciplinary hearings because he was not allowed to have representation. He also asserts that he was punished for pleading not guilty rather than pleading guilty at the disciplinary hearing. Plaintiff also says that he was punished for filing a grievance and was placed in segregation. According to Plaintiff, his medical information was shared with other inmates and other persons who were not authorized to receive the information. Plaintiff also complains about actions taken toward other prisoners. Finally, Plaintiff alleges that detention officers were not making rounds as required. As relief, Plaintiff seeks damages and injunctive relief.

Defendants move for dismissal of all claims either through Federal Rule of Civil Procedure 12(b)(6) or Rule 12(c). The Clerk's Office mailed Plaintiff notices of his right to respond to both Motions. (Notices [Doc. #18, #24].) The notices were mailed to the address Plaintiff provided the Court, however the first notice was returned by the postal service as undeliverable. The second notice was sent to the same address, and was not returned. Plaintiff thereafter filed a Motion for Extension of Time to file a response [Doc. #25], which the Court granted [Doc. #26] as to both Motions. Plaintiff has not filed a response to either Motion, however, and the time for responding has now expired. Therefore, Defendants' Motions are unopposed.

II.  DISCUSSION

The standard for granting judgment on the pleadings is the same as for granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002).  A plaintiff fails to state a claim upon which relief may be granted under Rule 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

As stated above, Plaintiff has not responded to either of Defendants' Motions.  Under this Court's local rules, when a respondent fails to file a response to a motion, "the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."  LR 7.3(k).  The Court will nevertheless briefly outline the reasons for granting Defendants' motions.

### A. Defendant Guilford County

In North Carolina, the Sheriff of the county is responsible for the operation of the local jail or detention center.  See Blair v. County of Davidson, No. 1:05CV11, 2006 WL 1367420, at *7 (M.D.N.C. May 10, 2006) (allegations against Sheriff and his deputies for actions taken while plaintiff was in jail fail to state a claim against the county in North Carolina).  As in Blair, Plaintiff has not alleged an unconstitutional policy or conduct by the county; his allegations pertain only to the employees of the detention center who are under the control of the Sheriff.  Therefore, all claims against Defendant Guilford County should be dismissed.

B.     Sheriff Barnes

The only allegations against Sheriff Barnes appear on page 2 of Plaintiff's Complaint. He alleges that Sheriff Barnes operated the detention center, that it was under his command and control during the relevant time period, and that he had a duty to protect Plaintiff and to provide adequate medical care. There are no allegations of any direct involvement by Sheriff Barnes.

Plaintiff names Sheriff Barnes as a Defendant in both his individual and official capacities. In order to state a claim against Defendant Barnes in his official capacity, Plaintiff must allege that the alleged constitutional violations resulted from an official policy or custom of the Sheriff's office. Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002). Because Plaintiff has failed to allege that any of the alleged deprivations he complains about occurred as a result of a policy or custom of the Sheriff's office, claims against Sheriff Barnes in his official capacity should be dismissed.[2]

Sheriff Barnes is also named as a Defendant in his individual capacity. Because Plaintiff does not allege that Sheriff Barnes was personally involved in any of the alleged deprivations he raises, Plaintiff must be attempting to hold Sheriff Barnes liable as the supervisor of the deputies working in the detention center. However, supervisory liability requires that Plaintiff show: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show

---

[2] Plaintiff's official capacity claims against other agents of the detention center, Defendants Lanier and Mangum, are also considered to be claims against the Sheriff's office. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). They are therefore redundant of the official capacity claims against the Sheriff, and they fail for the same reasons. See Blair, 2006 WL 1367420, at *11.

deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiff has not alleged any of these elements. Therefore, all claims against Sheriff Barnes in his individual capacity should be dismissed.

    C.    Sergeant Lanier

Plaintiff makes limited allegations against Sergeant Lanier. Plaintiff alleges that Sergeant Lanier threatened him for filing grievances, refused to accept grievances, transferred Plaintiff to segregation for filing grievances, and conspired with Defendant Mangum to "deprive Plaintiff of his civil rights." (Compl. at 2.) As stated above, Plaintiff's official capacity claims against Sergeant Lanier are the same as the official capacity claims against the Sheriff and fail for the same reasons. Therefore, only individual capacity claims remain to be addressed.

With regard to Plaintiff's complaints about filing grievances, there is no constitutional right to a grievance process. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.") Further, to state a claim for retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. Because filing a grievance is not a constitutional right, the claim that a retaliatory act was taken in response to a filing fails to state a claim for relief. Id.

Plaintiff's claim that he was transferred to segregation for filing grievances also does not state a valid claim for relief because it is too conclusory. See Adams, 40 F.3d at 74 (complaint failing to state how or why defendants retaliated against plaintiff too conclusory to merit relief). Moreover, Plaintiff does not allege that conditions in segregation were different from being in the general population. There are no facts from which this Court may infer that Plaintiff's placement in segregation created an atypical and significant hardship. See Hood v. Steinour, No. 5:11-CT-3018-FL, 2012 WL 3629198, at *3 (E.D.N.C. Aug. 22, 2012). Therefore, Plaintiff has failed to state a due process violation.

Finally, Plaintiff's brief allegation that Sergeant Lanier "conspired" with Defendant Mangum to deprive him of his civil rights is too conclusory to merit relief. There are no facts pled which "plausibly suggest[]" an agreement and, thus, a conspiracy. See Bell Atlantic Corp. v. Twombly, 550 U.S. at 556-57 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice."). Therefore, this claim should be dismissed.

D.  Defendant Mangum

Turning now to the allegations against Defendant Mangum, Plaintiff asserts that Defendant Mangum revealed confidential medical information about Plaintiff to other inmates in the cell block. (Compl. at 2.) Plaintiff does not allege any more facts about what was disclosed or how it was disclosed.

Courts differ on the issue of whether an inmate has a constitutional right to privacy in his medical information. Compare Doe v. Wigginton, 21 F.3d 733, 740 (6th Cir. 1994) (rejecting inmate's claim that his "constitutional right to privacy" was violated by the disclosure of his HIV

7

infection), with A.L.A. v. West Valley City, 26 F.3d 989, 990 (10th Cir. 1994) (reversing grant of summary judgment against arrestee who alleged that police officer revealed his HIV positive status to others and finding that "[t]here is no dispute that confidential medical information is entitled to constitutional privacy protection."); see also Sherman v. Jones, 258 F. Supp. 2d 440, 441-44 (E.D. Va. 2003) (concluding that no Supreme Court or Fourth Circuit case has found that an individual's confidential medical information falls within a constitutionally protected "zone of privacy.")

Even assuming that Plaintiff could theoretically make out such a constitutional right to privacy as to specific medical information, whether Plaintiff's rights were violated would depend upon the type of information that was disclosed. Walls v. City of Petersburg, 895 F.2d 188, 192 (4th Cir. 1990) ("[T]he first step in determining whether the information sought is entitled to privacy protection [is to determine] whether it is within an individual's reasonable expectations of confidentiality.") Plaintiff has not pled facts from which the Court could determine whether his disclosed information falls within the zone of privacy which might be protected by the Constitution. As such, Plaintiff has not pled sufficient facts to support the claim that Defendant Mangum violated his constitutional rights by disclosing confidential medical information.

Plaintiff also claims that Defendant Mangum used a "gang sign to tell other inmates in the cell block to jump Plaintiff when [he] came out of his cell." However, there is no allegation that Plaintiff was "jumped," or that his constitutional rights were otherwise violated as a result. Therefore, this claim should be dismissed.

Plaintiff also claims that Defendant Mangum refused to accept Plaintiff's grievances. This claim fails because as pointed out above, Plaintiff has no constitutional right to a grievance process. Plaintiff's conclusory claim that Defendant Mangum conspired with Sgt. Lanier fails for the same reason as the same claim against Sgt. Lanier discussed above. It is too conclusory to state a claim for relief.

Next Plaintiff alleges that Defendant Mangum "obstructed justice by trying to intimidate Plaintiff for excercising [sic] his civil rights to be free from this type of behavior and threats." (Compl. at 2.) This claim is conclusory because it states no facts upon which the Court may infer a constitutional violation. See Ashcroft v. Iqbal, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]'–'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).

### E. Medical Claims

Plaintiff claims that the "medical staff at the detention center" denied him heart medication for treatment of high blood pressure, atrial fibrillation, and an enlarged heart. (Compl. at 3.) He also claims that the medical staff used an outdated medical tube to perform a medical test, gave him high doses of Valium, failed to provide a special diet, and stole money from his account to pay for treatment for chronic illnesses. (Id.) Plaintiff has not, however, named as a defendant any persons who are a part of the medical staff. Because Plaintiff has not alleged that any named Defendant was involved in this conduct, he fails to state a claim upon which relief may be granted as to these allegations.

F.  Conditions of the Detention Center

Plaintiff complains generally about the conditions at the detention center. He alleges that he was not given the allowed amount of square footage per inmate, and that he had to sleep on the floor in a cell block designed for six but holding twelve to fifteen inmates with one toilet, one shower, and one sink. He claims that there sometimes were no sheets or towels. The food was served cold and the people working around food did not have the proper equipment to serve food or did not pass the health test to be able to serve food. Plaintiff does not allege that any named Defendant played a part in subjecting him to these conditions. In addition, it appears that Plaintiff could not have been exposed to these conditions for longer than 21 days. And, because Plaintiff alleges that he was placed in segregation at some point, the exposure period to overcrowding was likely shorter than 21 days.

As a pretrial detainee, Plaintiff's claims are analyzed under the Due Process Clause rather than the Eighth Amendment. Hill v. Nicodemus, 979 F.2d 987, 990 (4th Cir. 1992); McCrae v. Oldham, No. 91-6598, 1992 WL 216642 (4th Cir. Sept. 10, 1992). His due process rights are "at least coextensive with Eighth Amendment rights of convicted prisoners, and perhaps greater." McCrae, 1992 WL 216642, at *2. "While a convicted prisoner is entitled to protection only against "cruel and unusual" punishment, a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." Hill, 979 F.2d at 991. "However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." Hill, 979 F.2d at 991. Therefore, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some

other legitimate governmental purpose." Bell v. Wolfish, 441 U.S. 520, 538, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). Moreover, the standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. See Hill, 979 F.2d at 991. To show that a condition amounts to punishment, the plaintiff must show either an expressed intent to punish or a lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill, 979 F.2d at 991.

In the present case, although Plaintiff alleges that he was not given the allowed amount of square footage in his cell block, he does not allege the amount that he was provided, to enable the Court to properly examine this claim. He complains of having only one shower, toilet, and sink, but does not allege how this affected him in any way. There is no allegation that these fixtures were not operating at the time or that they were unsanitary or unclean. He alleges that he had to sleep on the floor, but does not allege that he did not have a mattress or otherwise state how this affected him. He says that "sometimes" there were no sheets or towels, but does not offer a more precise indication of how many times this occurred or state any ill effect therefrom. Plaintiff also complains that the detention center was not staffed with sufficient personnel and that the officers did not make rounds as required. However, he does not allege that this allegedly inadequate staffing led to any specific result.

Having reviewed these contentions, the Court notes that these allegations fail to rise to the level of cruel and unusual punishment under the Eighth Amendment. See, e.g., White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993). Plaintiff has not alleged any serious or significant physical or mental injury as a result of the conditions described above. Moreover, with respect to the Due Process Clause, Plaintiff has not shown either an expressed intent to punish or a lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.

Plaintiff also complains that he was not afforded due process at a disciplinary hearing because he was not allowed to have representation and because he was punished for trying his case rather than pleading guilty. (Compl. at 4.) Plaintiff does not allege that any of the named Defendants played a part in denying him representation which is, of itself, a reason to dismiss this claim. He also does not allege how he was disciplined, and his claim is conclusory. To the extent Plaintiff complains of not being represented by counsel at his disciplinary hearing, the Supreme Court has reaffirmed that convicted inmates do not have the right to either retained or appointed attorneys in prison disciplinary hearings. Baxter v. Palmigiano, 425 U.S. 308, 315 (1976). Plaintiff offers no reason why that rule should not be applied in his case.

Plaintiff also alleges that he was placed in segregation upon his arrival at the detention center when he should have been placed in the general population. This claim fails for the same reason that his claim that he was placed in segregation for filing grievances failed, as discussed above.

Plaintiff also alleges that other inmates were beaten by officers and that inmates with mental issues were mistreated. These allegations fail to state a claim for relief because, to state a claim, Plaintiff must allege that he sustained the violation of his constitutional rights, not that the rights of others were infringed. <u>Inmates v. Owens</u>, 561 F.2d 560, 562-63 (4th Cir. 1977).

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants' Motion to Dismiss [Doc. #15] and Defendant Guilford County's Motion for Judgment on the Pleadings [Doc. #22] be granted and that this action be dismissed.

This, the 16th day of September, 2014.

/s/ Joi Elizabeth Peake
United States Magistrate Judge